IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TREVR B. KOESTNER, | : | Civil No. 1:22-CV-1942 |
| Plaintiff, | : | |
| v. | : | |
| CORRECTIONAL OFFICER BENNING, *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

# **MEMORANDUM**

Before the court is Officer Benning's motion to dismiss the second amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 28.) Plaintiff has failed to cure the defects identified in his first amended complaint. As a result, the court will grant the motion, dismiss the second amended complaint, and close the case.

## PROCEDURAL HISTORY

Trevr B. Koestner, ("Plaintiff"), an inmate currently housed at the State Correctional Institution in Camp Hill, Pennsylvania ("SCI-Camp Hill"), initiated this action by filing a complaint under 42 U.S.C. § 1983 in December of 2022. (Doc. 1.) The complaint named three defendants: (1) Officer Benning ("Benning"), Corrections Officer at SCI-Camp Hill; (2) Officer 2 Unknown Name at SCI-Camp Hill; and (3) SCI-Camp Hill. (Doc. 1, pp. 2–3.)[1] Plaintiff alleged that on December 15, 2020, he and seven other inmates were transferred from SCI-

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

1

Dallas to SCI-Camp Hill, and upon arriving at SCI-Camp Hill were searched in a manner that violated Plaintiff's Fourth Amendment rights. (*Id.*, pp. 4–5.)

The court screened the complaint under 28 U.S.C. § 1915(e)(2)(B)(ii) on January 6, 2023, and dismissed all claims against SCI-Camp Hill because a facility is an improper defendant under 42 U.S.C. § 1983. (Doc. 6.) Therefore, the complaint was served on the only remaining defendant who could be identified by the court: Defendant Benning. (Docs. 6, 9.)

Defendant Benning filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) on February 22, 2023. (Doc. 12.) Following briefing, the court granted Defendant Benning's motion, and dismissed the complaint without prejudice for failing to plead any personal involvement by Defendant Benning, but granted Plaintiff leave to file an amended complaint. (Docs. 19, 22.)

Plaintiff filed an amended complaint on August 22, 2023. (Doc. 21.) Plaintiff named only Defendant Benning as a defendant and alleged that the following occurred on December 15, 2020:

> I was transferred to SCI Camp Hill from SCI Dallas due to Coronavirus outbreak. Upon entering SCI Camp Hill, inmates are [routinely] strip searched in accordance with policy. But, there was nothing [routine] about this strip search at all. Correction Officer Benning ordered myself and seven other inmates to go into a small room in reception and order[ed] us to stand in a circle facing each other. Officer Benning then order[ed] us to strip naked. We informed Officer Benning that this was not within policy to be subjected to this type of sexual abuse. At this

> time I was not aware of his name.  (Problem guards to not wear name tags so they can not be reported).  We tried to refuse this order but was informed that we would be sent to the hole, where we would not get any food.  Officer Benning then went around the circle and had us lift our private areas, bend over and spread our butt cheeks etc.  I was totally humiliated, which to this day, still affect[s] me.  At 7:30 pm there is no normal staff around, like during the day time.  Policy was not followed and Office[r] Benning as 10 years of service and knows better.

(Doc. 21, p. 4.)  Plaintiff raised a Fourth Amendment unreasonable search claim, an Eighth Amendment cruel and unusual punishment claim, and additional claims of sexual abuse "for Officer Benning[']s pleasure or entertainment," terroristic threats, abuse of power, sexual assault, sexual abuse, infliction of pain and suffering, humiliation, and post-traumatic stress disorder.  (*Id*., p. 5.)

Defendant Benning filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and a brief in support.  (Docs. 22, 23.)  Following briefing, the court granted Defendant Benning's motion.  (Docs. 25, 26.)  The court dismissed the Fourth Amendment claim because Plaintiff failed to allege facts demonstrating that the December 15, 2020 search was unreasonable and dismissed the Eighth Amendment claim because Plaintiff failed to allege facts that the search was "maliciously and sadistically for the very purpose of causing harm."  (Doc. 25.)  The court also dismissed the remaining claims raised against Defendant Benning for failing to allege facts in support of his legal conclusions.  (*Id*.)  The court granted Plaintiff leave to amend his complaint one final time, noting that: "should

the second amended complaint fail to cure the defects addressed above, the court will dismiss all claims with prejudice and close the case." (*Id*., p. 12.)

On January 19, 2024, the court received and docketed Plaintiff's second amended complaint. (Doc. 27.) Plaintiff alleges the following factual scenario took place on December 15, 2020 following his arrive at SCI-Camp Hill:

> Once we arrived at SCI Camp Hill we were taken into the Prison reception area where all new inmates go first to be processed. I went through the normal paperwork process. Once all eight (8) of us were done we were taken into a small room just off to the right of the guards desk. This is a small area with one (1) shower for delicing, laundry bins, and clothing storage area. Officer Benning was the Correctional Officer present. C/O Benning ordered all eight (8) of us to go into this room as a group. He ordered us to stand in a horseshoe pattern with him standing in the middle. . . C/O Benning then ordered all eight (8) of us to remove all of our clothing, again as a group. I informed C/O Benning that being stripped in this manner in front of other inmates was not within policy. I told him that I do not feel comfortable and is against PREA and can be considered sexual assault/abuse. C/O Benning responded by stating as a ORDER, that if I did not do what he said I will be taken to the Restrictive Housing Unit (The Hole) and he would personally guarantee that I would not receive any food while there. He informed me that refusing a order is a violation of policy and he will make sure the write up stick. C/O Benning then made us get naked in front of each other. He order[ed] me to hold my arms out and show him my palms then turn them over. He then order me to lift my arms and put them down. He then ordered me to open my mouth with my fingers and move my tongue around. He t[h]en told me to grab my penis and balls and hold them out and then lift them up. Next he ordered me to turn around and bend over and spread my ass cheeks and cough. When this was done I ask him if I can get dressed and he said No! I was forced to stand there naked shoulder to shoulder till everyone was searched, then we were allowed to get dressed.

4

(Doc. 27, p. 2.)  Plaintiff further alleges that the strip search was conducted in a manner that violated the Department of Corrections ("DOC") policy.  (Doc. 27, pp. 5–6; Doc. 27-1.)  Plaintiff again brings Fourth and Eighth Amendment claims against Defendant Benning.  (Doc. 27.)

## JURISDICTION AND VENUE

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States.  Venue is proper in this district because the alleged acts and omissions giving rise to the claims occurred at State Correctional Institute Camp Hill ("SCI-Camp Hill"), in Cumberland County, Pennsylvania, which is located within this district.  *See* 28 U.S.C. § 118(b).

## MOTION TO DISMISS STANDARD

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to

survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d. Cir. 2020).

When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

The pleadings of self-represented plaintiffs are to be liberally construed and held to a less stringent standard than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015), as amended (Mar. 24, 2015). Self-represented litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile. *See Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 861 (3d Cir. 2014); *see also Phillips*, 515 F.3d at 245. A complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002).

## DISCUSSION

Plaintiff's second amended complaint alleges largely the same facts as those raised in the amended complaint. Instead of pleading facts in support of his legal claims, Plaintiff has provided caselaw and argument as to why the court's dismissal of his claims previously were, in his eyes, not supported by caselaw. (Doc. 27.) Because Plaintiff has failed to cure the pleading defects set forth in the court's memorandum and order dismissing the first amended complaint, Docs. 25, 26, the second amended complaint will be dismissed the prejudice.

### A. Plaintiff's Fourth Amendment Claim Will Be Dismissed.

Plaintiff alleges that the December 15, 2020 strip search violated his Fourth Amendment rights.  (Doc. 27.)  The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures."  U.S. Const. amend. IV.  Inmates do not have a Fourth Amendment right to be free of strip searches under all circumstances.  *See Bell v. Wolfish*, 441 U.S. 520 (1979).  Although strip searches constitute a "significant intrusion on an individual's privacy," *United States v. Whitted*, 541 F.3d 480, 486 (3d Cir. 2008), where prison officials conduct such searches in a reasonable manner to maintain security and to prevent the introduction of contraband or weapons in the facility, strip searches do not violate the Fourth Amendment.  *See Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 621 F.3d 296, 309–11 (3d Cir. 2010), affirmed, 566 U.S. 318 (2012).

When determining the reasonableness of a strip search, courts must balance "the need for the particular search against the invasion of personal rights that the search entails" and consider "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."  *Bell*, 441 U.S. at 558–59 (holding that the prison's policy of strip and visual body cavity searches, requiring inmates to stand naked, lift their genitals and bend over and spread their buttocks for visual inspection, did not violate an

inmate's Fourth Amendment rights); *see also Brown v. Blaine*, 185 F. App'x 166, 169–70 (3d Cir. 2006) (finding no constitutional violation where inmate was required to lift his genitals, spread his buttocks, and then place his hands on his head and sweep his mouth with his fingers).

The Supreme Court also held that it is constitutional to conduct a full strip search of an individual detained in the general population of a jail, regardless of the reason for detention or the existence of reasonable suspicion that the individual is concealing something. *Florence*, 566 U.S. at 328 (explaining that "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities"); *see also Small v. Wetzel*, 528 F. App'x 202, 207 (3d Cir. 2013) (holding that it is constitutional to conduct a full strip search of an inmate in general population, "regardless of the reason for detention or the existence of reasonable suspicion that the individual is concealing something") (citing *Florence*, 566 U.S. 318).

Moreover, there is no violation of Plaintiff's constitutional rights by conducting the strip search, including a visual body cavity search, in front of other inmates. *See Illes v. Beard*, No. 1:12-cv-964, 2013 WL 2285565, at *5 (M.D. Pa. May 23, 2013); *Eby v. Karnes*, No. 1:19-CV-2069, 2020 WL 1550634 (M.D. Pa. Apr. 1, 2020) (where the search was performed in front of other inmates and included a visual cavity search).

Here, Plaintiff has yet again failed to allege any facts demonstrating that December 15, 2020 search was unreasonable. The fact that it was performed in front of other inmates does not establish a constitutional violation. Therefore, the Fourth Amended claim will be dismissed with prejudice.

### B. Plaintiff's Eighth Amendment Cruel and Unusual Punishment Claim Will Be Dismissed.

Plaintiff alleges that the December 15, 2020 strip search also violated the Eighth Amendment protection against cruel and unusual punishment. (Doc. 27.) The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. Amend. VIII. The Eighth Amendment applies when an inmate alleges that a strip search was conducted in a physically abusive manner. *See Jordan v. Cicchi*, 428 F. App'x 195, 199–200 (3d Cir. 2011); *Robinson v. Ricci*, No. 09-2023, 2012 WL 1067909, at *17 n.6 (D.N.J. Mar. 29, 2012) (explaining that the "Eighth Amendment may be implicated where the strip search or visual body cavity search was conducted in a brutish and unreasonable manner"). Visual-body cavity searches constitute cruel and unusual punishment in violation of the Eighth Amendment only when "they are 'undertaken maliciously or for the purposes of sexually abusing an inmate.'" *Parkel v. Danberg*, 833 F.3d 313, 335 (3d Cir. 2016) (quoting *Crawford v. Cuomo*, 796 F.3d 252, 258 (3d Cir. 2015)).

Nothing in Plaintiff's second amended complaint supports a conclusion that the strip search was done in a physically abusive manner or "undertaken

10

maliciously or for the purposes of sexually abusing an inmate." While Plaintiff alleges that the strip search was done in violation of DOC policy, DOC policy does not have the force of law and does not rise to the level of a regulation. *Atwell v. Lavan*, 557 F.Supp.2d 532, 556, n. 24 (M.D. Pa. Mar. 26, 2008) *citing Mercy Catholic Medical Center v. Thompson*, 380 F.3d 142, 154 (3d Cir. 2004). Nothing in the third pleading indicates that the search was performed "maliciously and sadistically for the very purpose of causing harm" outside of Plaintiff's reliance on internal DOC policy and his conclusion that he was sexually abused. Therefore, Plaintiff's Eighth Amendment claim will be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendant Benning's motion to dismiss will be granted. Before dismissing a civil rights complaint, a district court "must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245. Here, Plaintiff has been awarded multiple attempts to cure the defects identified in his pleading. He has failed to cure these defects. Therefore, further leave to amend his pleading is futile, and the case will be dismissed with prejudice. An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: August 22, 2024